IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET FELKNER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 13-2189 |
| | : | |
| WERNER ENTERPRISES, INC., et. al.., | : | |
| Defendant. | : | |

# M E M O R A N D U M

SITARSKI, M.J.                                                        March 14, 2014

Currently pending before the Court is a motion for summary judgment filed by

Defendants Werner Enterprises, Inc. and Andrew Ziemba.  For the following reasons, the motion

will be **GRANTED IN PART AND DENIED IN PART**.


## I.      INTRODUCTION

Plaintiff initiated this wrongful death and survival action on March 27, 2013, in the

Philadelphia Court of Common Pleas.  (Doc. No. 1, Ex. A).  Invoking federal diversity

jurisdiction, Defendants removed the case to this Court on April 24, 2013.  (Doc. No. 1).  This

matter initially was assigned to District Court Judge Juan R. Sanchez.  On June 4, 2013, the

parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28

U.S.C. 636(c) and Fed.R.Civ.P. 73, and the matter was referred to me.  (Doc. No. 16).

Plaintiff brings various claims arising out of an April 21, 2011, motor vehicle accident

that resulted in the death of Danielle Felkner ("the deceased").  As against Defendants Werner

Enterprises, Inc. and Andrew Ziemba, Plaintiff brings claims for wrongful death (Count I),

survival (Count II), and negligence (Count IV).  Plaintiff brings an additional negligence claim

against Defendant Werner Enterprises, Inc. for negligence in the hiring, supervising, training, and entrustment of Mr. Ziemba (Count III).

On February 13, 2013, following completion of discovery, Defendants filed the instant Motion for Partial Summary Judgment.  (Doc. No. 57).  Defendants seek dismissal of Plaintiff's claim for negligent hiring, training, supervision, and entrustment (Count III) and Plaintiff's claim for punitive damages.  *Id.*  On March 6, 2014, Plaintiffs filed a Response.[1]  (Doc. No. 59).  Accordingly, the matter is now ripe for disposition.

## II.     FACTUAL BACKGROUND[2]

### A.     The Parties

Plaintiff is the administratrix of the estate of Danielle Felkner, who passed away as a result of a motor vehicle collision with a vehicle driven by Defendant Andrew Ziemba.

At the time of the accident, Defendant Andrew Ziemba ("Mr. Ziemba") was a truck driver employed by Defendant Werner Enterprises, Inc. ("Werner").  Werner has admitted that Mr. Ziemba was acting in the course and scope of his employment at the time of the accident.  (Def. Br. at 9).

### B.     The April 21, 2011 accident

On April 21, 2011, a tractor trailer operated by Mr. Ziemba collided with an automobile driven by the decedent in Bucks County.  (Compl ¶ 5).  The collision occurred in an intersection,

---

[1]  Plaintiff also made additional filings that contain exhibits accompanying her Response. (Doc. Nos. 60-62).

[2]  The following facts are either undisputed, or are taken in the light most favorable to Plaintiffs, the non-moving party.

after Mr. Ziemba drove through a red traffic light.[3]  (*Id.* ¶ 7).  Both the decedent and her passenger (Raven Shepherd) were injured and taken to Aria Torresdale Hospital.  (Def. Mot. Ex. C(1)).  A few hours later, the decedent was airlifted to Jefferson Hospital, where she eventually passed away as a result of injuries sustained from the collision.  (*Id.*)

Prior to the accident, Mr. Ziemba had been in the process of delivering furniture and supplies to various Office Max retail stores, on behalf of Werner.  He had arrived in Hazelton, PA at 12:30 a.m. on the morning of the accident and slept in the sleeper cab of his truck for around eight hours.  (Def. Mot. Ex. C(1) at 11).  He made the first of four scheduled stops at 9:00 a.m. in Lansdale, PA; his second stop in Willow Grove, PA at 10:00 a.m.; and his third stop in Feasterville, PA at 11:00 a.m.  (*Id.* at 9, 11).  After the Feasterville stop, he took a two hour break in his sleeper cab; he was en route to his fourth stop when the accident occurred.  (*Id.*)  It is undisputed that there were no adverse weather conditions at the time of the accident, and the roads were generally clear and dry.  (Def. Mot., Ex. C; Pl. Resp. to Def. St. of Facts ¶ 7).

Upon questioning, Mr. Ziemba stated that he believed the light was yellow when he drove through the intersection, and that he did not see the decedent's car.  (*Id.* at 10).  Mr. Ziemba also asserts that he did not stop for the perceived yellow light because he did not feel he had enough room to do so.  It undisputed that prior to entering the intersection he blew his air horn three or four times to warn people of his approach.  (*Id.* at 18).

C.    **Events Following the Accident and Subsequent Investigations**

Shortly after the accident, several police officers, medics, and fire personnel arrived on

---

[3]  Mr. Ziemba testified that he believed the traffic light was yellow when he entered the intersection.  (*See* Ex. E at 94).

the scene.[4]  (*See* Def. Mot. Ex. C ("Bensalem County Police Department Records")).  Mr.

Ziemba was questioned at the scene of the accident and thereafter at police headquarters; he

maintained that he thought the light was yellow prior to driving through the intersection.[5]  (*Id.* at

10, 19-20)**.**  He voluntarily submitted to a blood test, which revealed that he did not have any

drugs or alcohol in his system at the time of the accident.  (*Id.* at 29).  A blood test of the

decedent revealed the presence of marijuana and a large amount of opiates.[6]  (*Id.* at 17).  There

is no evidence indicating that Mr. Ziemba was using his cell phone at the time of the accident.[7]

On December 18, 2012, Mr. Ziemba entered a plea of nolo contendere in the Bucks County

---

[4]  Numerous police reports and documents are present in the record.  The Federal Rules of Civil Procedure govern the standard for summary judgment in federal courts.  Rule 56(c)(1)(A) states that a party can support its motion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  However, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Applying this standard, the Third Circuit has stated that "'hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial.'"  *Barr v. Cnty. of Clarion*, 417 Fed. App'x 178, 180 n.4 (3d Cir. 2011).  Because both the police officers and witnesses interviewed could testify regarding their personal knowledge, the Court may properly consider this evidence**.**  *See Clark v. Clabaugh*, 20 F.3d 1292, 1294 (3d Cir. 1994) (addressing summary judgment motion by utilizing police reports present in the record).

[5]  Plaintiff disputes that Mr. Ziemba believed the traffic light was yellow.  A party's state of mind is better left to the trier of fact, as it often "depends upon the credibility of witnesses in testifying as to their own states of mind, and assessing credibility is a delicate matter best left for the fact finder."  *Metzger v. Osbeck*, 841 F.2d 518, 521 (3d Cir. 1998) (internal quotations omitted).  The above facts merely serve to detail Mr. Ziemba's initial responses shortly after the accident.

[6]  The presence of opiates was due to pain medication given to the decedent at the hospital before she passed away.

[7]  Plaintiffs dispute this fact, arguing that Mr. Ziemba had his cell phone with him at the time of the accident and made several calls after the accident.  However, none of this evidence is sufficient to create an inference that Mr. Ziemba was actually using his cell phone at the time of the accident.  *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("An inference based upon a speculation or conjecture does not create a material factual dispute").

Court of Common Pleas to charges of involuntary manslaughter, failure to stop at a right light, and reckless driving.  (Pl. Resp. Ex. 3).

### D.   Mr. Ziemba's Employment History and Training

Mr. Ziemba began his career as a truck driver in 2010 by completing a four-week training course at Carolina Trucking Academy.  (Def. Mot. Ex. E at 24, 30).  The course entailed both classroom and on-the-road teaching, where students were taught things such as how to stop a tractor trailer and when to use the air horn.  (*Id.* at 30-31).  After successfully completing his course, he obtained a job at Werner and got a Class A Commercial License.  (Def. Mot. Ex. C(1) at 9; Pl. Resp., Ex. 5).  At Werner, he received around two more months of training from his mother, who was also a Werner driver, but who did not have prior experience training other Werner drivers.[8]  (Pl. Resp. Ex. 16 at 71-72).

Mr. Ziemba had worked at Werner for around eight months before the accident occurred. During that time he was involved in two incidents that resulted in Werner placing him on disciplinary probation.  (Def. Mot. Ex. C(1) at 8; Pl. Resp. Ex. 1).  The first incident occurred when Mr. Ziemba attempted to take a sharp left turn in a parking lot, and hit the parking lot fence.  (Pl. Resp., Ex. 1 at 1).  In response, he received 45 days' probation, and was counseled on the use of mirrors while making turns.  *Id.*  The second incident occurred at a distributor stop when Mr. Ziemba ran into a snow bank as he tried to straighten out his trucking unit, causing some damage to his right side bumper.  (*Id.* at 2).  He failed to report the incident, and as a result received 90 days' probation, and was counseled on the importance of reporting future accidents and incidents.  (*Id.*)

---

[8]  However, Ms. Ziemba had taken a three day class in which she learned how to train other drivers.  (Pl. Resp. Ex. 16 at 72).

## III.     STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party.  *Id.* at 248-29.  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) *(citing U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962));  *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  *Anderson,* 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions.  *Trap Rock Indus. v. Local* 825, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly

6

supported motion for summary judgment." *Anderson*, 477 U.S. at 257.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.  If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden.  *Celotex Corp.*, 477 U.S. at 322-23.

## IV.    DISCUSSION

Defendants move for summary judgment on: (1) Plaintiff's claim for punitive damages against Mr. Ziemba, (2) Plaintiff's claim for punitive damages against Werner; and (3) Plaintiff's claim of negligent hiring, supervision, training, and entrustment.  This Court will address these *seriatim*.

### A.    Punitive Damages for Mr. Ziemba's Conduct

Under Pennsylvania law, punitive damages are an "extreme remedy" and are available only when the plaintiff has established that the defendant has acted in "a particularly outrageous fashion."[9] *Phillips v. Cricket Lighters*, 883 A.2d 439, 445-46 (Pa. 2005).  Outrageous behavior includes "evil motive" or "reckless indifference to the rights of others." *Id.* at 445 (*quoting Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1096 (Pa. 1985)).  A defendant acts with reckless indifference when his or her conduct "'creates an unreasonable risk of physical harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent.'"[10] *Id.* (*quoting Hutchison v. Luddy*, 870 A.2d 766, 771 (Pa. 2005)).  Plaintiff's

---

[9]  Because this is a diversity case, "Pennsylvania's substantive law will ... apply regarding the issue of punitive damages." *Achey v. Crete Carrier Corp.*, No. 07-3592, 2009 U.S. Dist. LEXIS 44353, at *7 (E.D. Pa. Mar. 30, 2009).

[10]  Plaintiffs do not appear to claim that Defendant had an "evil motive."  Therefore, this Court will focus on whether punitive damages are appropriate under a "reckless indifference" theory.  *See Achey*, 2009 U.S. Dist. LEXIS 44353, at *7 ( "As Plaintiff does not appear to argue

punitive damages claim requires evidence establishing that: (1) Defendant had a subjective appreciation of the risk of harm to which the deceased was exposed and, (2) he acted or failed to act, as the case may be, in conscious disregard of that risk.  *Kiefer v. Reinhart Foodservice, LLC*, No. 09-1558, 2013 U.S. Dist. LEXIS 82025 (W.D. Pa. June 11, 2013) (citations omitted).

Taking all inferences in favor of Plaintiff, the non-moving party, I find that there is sufficient evidence to create a genuine issue of fact as to the first element.  Specifically, the fact that Mr. Ziemba blew his horn three times before entering the intersection might allow a reasonable jury to infer that he had some conscious appreciation of the risk that he might hit someone who was driving through the intersection.

I also conclude that there is a genuine issue of material fact regarding whether Plaintiff "acted or failed to act ... in conscious disregard of that risk."  Indeed, courts faced with similar factual scenarios have found sufficient evidence of outrageous conduct to defeat a summary judgment motion.  In *Grosek v. Panther Transp., Inc.*, No. 07-1592, 2009 U.S. Dist. LEXIS 13300 (M.D. Pa., Feb. 20, 2009), the district court found the following facts sufficient to allow a reasonable jury to conclude that punitive damages were appropriate:

(1)     the driver testified that he never slowed down as he approached the intersection even though he had observed the stoplight change to yellow;

(2)     the driver admitted that his foot was still on the accelerator when the accident occurred;

(3)     eyewitness testimony that the light had been red "four or five seconds" before he entered the intersection and struck plaintiff's car;

(4)     evidence that the weather was clear when the defendant ran through a red light;

(5)     expert testimony that the traffic light had been red four to six seconds before the

_____

that [the defendant] had an evil motive, the Court will assess whether [the defendant] was recklessly indifferent to the rights of others.").

accident and that the driver had adequate time to stop the truck before entering the intersection but failed to do so.

2009 U.S. Dist. LEXIS 13300, at *8-10.  Similarly, courts have denied motions seeking to dismiss punitive damages claims when there exists evidence that truck drivers were driving too fast to control or stop their vehicles.  *See Paone v. Lipuma*, No. 04-970, 2006 U.S. Dist. LEXIS 97289, at *4-5 (M.D. Pa. Feb. 1, 2006) (genuine dispute of fact with respect to whether the plaintiff was entitled to punitive damages when driver admitted to following too closely and traveling at a speed too fast for the conditions to allow proper control of his vehicle); *Logue v. Logano Trucking Co.*, 921 F. Supp. 1425, 1428 (E.D. Pa. 1996) (denying a motion to dismiss a claim for punitive damages where the plaintiff alleged the defendant truck driver "operated an overloaded tractor trailer truck with improperly adjusted brakes at an excessive, unreasonable, and imprudent rate of speed so that the truck could not stop for a red light")**.**

Here, as in *Grosek*, and taking the facts in the light most favorable to Plaintiff, as he approached the intersection, Mr. Ziemba did not slow down or attempt to stop, even though (as other witnesses would testify), the light had turned red.  (Pl. Ex. 4 at 92).  Indeed, an eyewitness testified that the light had been red "at least eight seconds" before the accident, and Plaintiff has produced an expert report opining that Mr. Ziemba could have stopped before the collision point.  (Pl. Resp. Ex. 11 ¶ 6.6).  Finally, even if the jury credits Mr. Ziemba's testimony that the light was yellow, the jury will also have to consider Mr. Ziemba's testimony, that he was aware that he should let off the gas, slow down, and stop when a light turns yellow.  They jury will also consider the testimony from another truck driver on the road behind Mr. Ziemba, who testified that he believed Mr. Ziemba had sufficient time to stop once the light turned yellow.  (Pl. Resp. Ex. 4 at 26; Ex. 6 at 28-30).

Defendants argue that the evidence does not establish that Mr. Ziemba was recklessly indifferent because: (1) Mr. Ziemba was aiming to conduct his vehicle safely and proceeded through the intersection because he did not think he could stop, and (2) he blew his air horn to avoid a potential collision.  (Def. Mot. at 5).  However, as detailed above, Plaintiff has pointed to evidence that creates an issue of fact as to whether Mr. Ziemba could stop; and even if he could not stop, courts have allowed punitive damages claims to proceed when there exists evidence that truck drivers were driving too fast to stop their vehicles.  *See Paone, supra* P.9.  While Mr. Ziemba did act in response to the risk of collision by blowing his air horn, such a fact does not, by itself, preclude a finding that he was recklessly indifferent.  *Cf. Sabo v. Suarez,*, No. 08-1889, 2009 U.S. Dist. LEXIS 66452, at *7-8 (M.D. Pa. July 31, 2009) (rejecting claim that punitive damages were not appropriate when the driver took steps of caution when going through the red light).  Indeed, ". . . the danger[s] posed by motor vehicles are magnified when the vehicle in question is a tractor-trailer weighing several tons."  *Grosek*, 2009 U.S. Dist. LEXIS 13300, at *10-11.  It will be for the jury to determine if Mr. Ziemba was recklessly indifferent, even though he might adduce evidence to support the finding that he attempted to warn those in the intersection of his approach.  *See Sabo*, *supra*.

In sum, Plaintiff has presented sufficient evidence from which a jury might conclude that Plaintiff was recklessly indifferent to the rights of others.  Accordingly, Defendant Ziemba's motion for summary judgment on the punitive damages claim will be **DENIED**.

### B.    Negligent Supervision

#### 1.    Punitive Damages for Werner's Conduct

Plaintiff also seeks punitive damages against Werner for its own conduct in negligently hiring, supervising, training, and entrusting Mr. Ziemba.   Specifically, Plaintiff contends that

Werner's negligence in hiring, supervising, training, and entrusting Mr. Ziemba constituted

"outrageous behavior" because Werner let Mr. Ziemba drive, despite the fact they were aware

that Mr. Ziemba had little experience driving.  In fact, Warner had disciplined Mr. Ziemba twice

before the accident.  (Pl. Resp. at 5).  Plaintiff also argues that Werner was deficient in training

Mr. Ziemba because they let his mother train him, despite her own spotty driving record.  (*Id.*)

Finally, Plaintiff argues that Werner failed to adequately advise his supervisor and/or dispatcher

that Mr. Ziemba had been disciplined.  (*Id.*)

Defendants argue that summary judgment is appropriate because ". . . there is no

evidence to establish that Werner knew of any risks or consciously acted in deliberate disregard

of those risks with regard to its hiring, supervision, training, or entrustment of its vehicle to

Ziemba."  (Def Mot. ¶ 31).  Pursuant to the to the punitive damages standard set forth above,

Plaintiff must set forth sufficient evidence that: (1) Werner had a subjective appreciation of the

risk harm to which the decedent was exposed (Mr. Ziemba driving through a red traffic light);

and (2) Werner acted or failed to act in conscious disregard of that risk.[11]  *Hutchinson*, 870 A.2d

at 772; *see Grosek*, 2009 U.S. Dist. LEXIS 13300 at *11-14.

I conclude that Plaintiff's evidence fails to create a genuine issue of fact that would allow

---

[11]  Plaintiff's evidence focuses on Werner's knowledge that Mr. Ziemba was generally
inexperienced and had some prior, unrelated driving issues.  As discussed below, Plaintiff's
claim is too broad, as the salient issue is whether Werner had an appreciation of the risk that the
driver would engage in the specific conduct that occurred.  For example, in *Burke v. Transam
Trucking, Inc.*, 605 F. Supp. 2d 647, 656 (M.D. Pa. 2009), the plaintiff was hit after a truck
driver went around a turn above the speed limit.  In determining if punitive damages could be
brought against the trucking company for negligent supervision, the Court looked to see if the
trucking company had a subjective appreciation of the risk that the driver would <u>speed</u>, which
was the danger the plaintiff had been faced with.  *Id.*
Here, Plaintiff was faced with the danger of Mr. Ziemba running through a red light.
Therefore, this Court's analysis will focus on whether Werner had a subjective appreciation of
the risk that Mr. Ziemba might engage in such conduct.

a reasonable jury to conclude that Werner's negligence in hiring, supervising, training, and entrusting Mr. Ziemba was so outrageous to justify an award of punitive damages.

First, there is no evidence that Werner trained or encouraged their drivers to blow their air horns and drive through yellow lights in a situation where they did not think they could stop for a red light.  *See Grosek*, 2009 U.S. Dist. LEXIS 13300, at *13-14 (finding employer did not act outrageously in training when their was no evidence they their training "encouraged drivers to ignore traffic laws or to take the risk of entering an intersection when a traffic light was red or yellow").  To the contrary, Mr. Ziemba testified that he was fully aware that when he saw a yellow light he was to "hit the brakes . . . [l]et off the gas, hit the brakes . . . to slow down and stop."  (Pl. Resp. Ex. 4 at 26).  Furthermore, "employing a driver who did not meet all [of a company's] training requirements does not amount to reckless indifference to the clear possibility that such a driver would ignore basic traffic laws, run a red light and injure another driver."  *Grosek*, 2009 U.S. Dist. LEXIS 13300, at *14.  Thus, even if Werner's training was deficient because they allowed Mr. Ziemba's mother to train him despite her lack of experience, such evidence would not justify an award of punitive damages.  *See id.* (finding that failure of company to ensure that driver met company's own safety standards did not justify an award of punitive damages).

Second, evidence that Werner let Mr. Ziemba drive, despite disciplining him two times before the accident, does not create a genuine issue of fact.  Evidence of past accidents or incidents cannot serve as a basis for punitive damages against an employer when there is no nexus between the driving violations and the conduct leading to the accident such that an employer would have a conscious appreciation of the risk.  *Achey*, 2009 U.S. Dist. LEXIS 44353, at *16 (citing *Ditzler v. Wesolowski*, No. 05-325, 2007 U.S. Dist. LEXIS 56736, 2007

WL 2253596, at *7 (W.D. Pa. Aug. 3, 2007) (past acts can only be a proper basis upon which punitive damages may be awarded if they are substantial factors in bringing about harm to plaintiff)).

In *Achey*, the plaintiff sought punitive damages against a trucking company after one of their drivers (who allegedly had sleep apnea) fell asleep behind the wheel and collided with the plaintiff. *Id.* at 10-11. The plaintiff argued that the trucking company acted outrageously by allowing an agent to drive despite the fact he had been involved in several accidents, had received an overweight axle citation and speeding ticket, had numerous log book discrepancies, and had accumulated a sanctionable amount of safety violations. *Id.* at 16-18. The Court found that the prior incidents (none of which involved the driver falling asleep while driving) failed to provide the trucking company with sufficient notice that the driver would fall asleep at the wheel while traveling at high speeds. *Id.* at 18.

Here, Mr. Ziemba's driving history was less troubling than that of the driver in *Achey*. At the time of the incident, Mr. Ziemba had two prior incidents, both of which resulted in Werner placing him on disciplinary probation. The first incident involved a misjudged turn that resulted in a low-speed collision with a fence, and the second incident involved unreported damage to the truck's bumper after Mr. Ziemba hit a snow bank while trying to straighten out his truck.[12] (Pl. Mot. Ex. 1). Neither of these incidents could serve to give Werner a conscious appreciation of the risk that Mr. Ziemba would drive recklessly on the road, and/or violate basic traffic laws. Because there is no nexus between the conduct underlying Mr. Ziemba's previous disciplinary actions and the conduct that led to the accident in this case, these acts do not

---

[12] The conduct at issue in the second incident was Mr. Ziemba's failure to report the incident, not the incident itself. (*See* Pl. Mot., Ex. 1).

constitute sufficient evidence to establish that Werner's behavior (allowing Mr. Ziemba to continue to drive) was outrageous.[13]  *See Achey*, *supra*; *see also Flora v. Ferguson*, Nos. 88-9433, 89-2983, 1990 U.S. Dist. LEXIS 1168 (E.D. Pa. Feb. 1, 1990) (violations of regulations did not sustain claim for punitive damages when the violations had no relation to plaintiff's injuries); *Cf. Burke*, 605 F. Supp. 2d at 656 (finding employer did have subjective appreciation of risk that driver would speed when employer was aware driver had multiple speeding violations).

Consequently, Plaintiff has failed to set forth sufficient evidence to create an issue of material fact as to whether Werner's conduct in hiring and training Mr. Ziemba was sufficiently outrageous to justify punitive damages.

### 2. Dismissal of the Negligent Supervision Claim

Defendants argue that since Plaintiff cannot establish punitive damages for any negligence by Werner in hiring and training Mr. Ziemba, it follows that the claim for negligent hiring, supervision, training, and entrustment should be dismissed.[14]

---

[13]  In light of the fact that these incidents cannot be said to put Werner on notice of the risk that Plaintiff would engage in the conduct that led to the accident, it follows that Werner's failure to advise Mr. Ziemba's supervisor and dispatcher about the prior incidents will also fail to establish an issue of fact.  As explained above, the prior incidents had no relation to the conduct that resulted in the accident, thus there is no basis to infer that informing the supervisor and/or dispatcher of these previous incidents would lead them to ensure that Mr. Ziemba did not run through a red light.

[14]  In their Motion, Defendants state the issue more broadly, arguing that Plaintiff's failure to establish entitlement to punitive damages requires dismissal of the Negligent Supervision claim.  However, such an argument fails to account for the two bases under which Plaintiff seeks punitive damages: for Mr. Ziemba's conduct in driving, and for Werner's conduct in hiring and training him.  For purposes of the instant analysis, it is only Werner's conduct in hiring and training that is relevant.  *See Achey*, 2009 U.S. Dist. LEXIS 44353 (dismissing claim for negligent entrustment because agency was admitted and punitive damages for such conduct was inappropriate, but allowing the plaintiff to seek punitive damages for the driver's conduct);

"As a general rule, courts have dismissed claims for negligent supervision and negligent hiring when a supervisor defendant conceded an agency relationship with the co-defendant." *Achey*, 2009 U.S. Dist. LEXIS 44353, at *25.  An exception to the rule exists if there is a viable punitive damages claim asserted against the supervisor defendant for negligent supervision and/or hiring.  *Id.* at 25-26.  As such, numerous District Courts (applying Pennsylvania law) have "refused to allow claims for negligent entrustment, supervision, monitoring, and hiring to proceed when (1) the supervisor/employer defendant admits that its employee was acting in the scope of his or her employment at the time of the accident, and (2) the plaintiff does not have a viable claim for punitive damages against the supervisor/employer defendant."  *Sterner v. Titus Transp., LP*, No. 10-2027, 2013 U.S. Dist. LEXIS 173981, at *10 (M.D. Pa. Dec. 12, 2013) (collecting cases).

Here, Werner has admitted that an agency relationship exists and that Mr. Ziemba was acting in the scope of his employment at the time of the accident.  (*See* Def. Br. at 9).  As noted above, there is insufficient evidence to support a finding of punitive damages for Werner's conduct in hiring and training Mr. Ziemba.[15]  *See supra* § IV (B)(a).  Accordingly, this claim shall be dismissed in its entirety.

## V.      CONCLUSION

---

*Cf. Burke*, 605 F. Supp. 2d at 657-59 ("given our finding that Plaintiffs' punitive damages claims go forward, we find summary judgment on Plaintiffs' negligent hiring, supervision, monitoring, and entrustment claims inappropriate at this stage in the proceedings").

[15]  Werner might still be vicariously liable for punitive damages on the basis of Mr. Ziemba's conduct.  *See Shiner v. Moriarty*, 706 A.2d 1228, 1240 (Pa. Super. 1998) (noting that Pennsylvania law allows an employer to be vicariously liable for punitive damages arising out of the negligent conduct of its employees).

Questions of material fact exist, thus rendering summary judgment inappropriate on Plaintiff's punitive damages claim for Mr. Ziemba's alleged negligence.  However, because Plaintiff's have failed to show that there is a genuine dispute of material fact justifying an award of punitive damages against Werner and because Werner has admitted that an agency relationship exists, Plaintiff's claim of negligent entrustment fails as a matter of law.  Thus, Defendant's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

An appropriate Order follows.

BY THE COURT:

   /s/ Lynne A. Sitarski
_____

LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

16